IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **KENNETH W. WILLIAMS,**<br><br>    **Plaintiff,**<br><br>    v.<br><br>**CORECIVIC, INC. AND CORECIVIC OF TENNESSEE, LLC,**<br><br>    **Defendants.** | Case No. 17-2310-JAR |

## MEMORANDUM AND ORDER

Plaintiff Kenneth Williams filed this employment action against his former employer, alleging retaliation under Title VII and 42 U.S.C. § 1981, age discrimination under the Age Discrimination in Employment Act ("ADEA"), and race discrimination under Title VII and 42 U.S.C. § 1981. Before the Court is Defendants' Motion to Dismiss (Doc. 7). The motion is fully briefed and the Court is prepared to rule. For the reasons stated below, the Court grants in part and denies in part the motion.

### I.   Factual Background

The Court summarizes the facts alleged in the Complaint as follows and assumes them to be true for purposes of deciding this motion.

Defendants operate prison facilities throughout the United States. Plaintiff is an African-American male. He was 56 years old when Defendants terminated his employment. He has approximately 27 years of experience working in prisons. Prior to working for Defendants, he worked for the Texas Department of Corrections for almost 17 years.

Plaintiff began his employment with Defendants on April 4, 2011, as a Captain/Supervisor. He transferred from Defendants' facility in Louisiana to Leavenworth,

1

Kansas in June 2012. He had an excellent employment record prior to the incidents that gave rise to this action.

In 2015, Plaintiff received a Problem-Solving Notice ("PSN") for allowing two staff members to work beyond 16-hours in a 24-hour day. During that same period, other white Captain/Supervisors had done the same, but they did not receive any disciplinary action. As a result of this PSN, Plaintiff received an adverse performance evaluation in 2016, which he grieved on the merits.

Plaintiff received complaints from his staff members regarding safety and other issues in the facility. On or about September 26, 2016, Plaintiff reported these concerns to Ellis, Defendants' Managing Director, via email. Ellis responded to the email and met with Plaintiff. They discussed the increase in staff and inmate assaults as well as various security deficiencies.

Defendants implemented a new compliance requirement effective September 2016. Defendants required management employees to complete 40 hours of training during their first year of employment and 24 hours of training each year thereafter. Training could be completed in facility company sessions or online. Defendants notified employees of this new policy in October 2016. The notification advised employees to complete the requisite hours of training by December 1, 2016.

On October 4, 2016, Defendants informed Plaintiff that a three-day training course, scheduled on December 7 through December 9, would be offered. Plaintiff signed up to take this course.

On October 23, 2016, Plaintiff again emailed Ellis regarding safety and other concerns. He told Ellis that the situation had worsened and that he felt that he was being retaliated against for reporting the issues and filing grievances. Ellis never responded to Plaintiff.

On October 24, 2016, Plaintiff contacted Defendants' Ethics Office regarding his concerns, including discrimination and retaliation along with other issues he was experiencing at the Leavenworth facility.

On November 21, 2016, Plaintiff was notified by his chief that he had been removed from the December training course without explanation and was advised that he would have to complete the online training on his own. Plaintiff repeatedly attempted to complete the training online but was unable to do so due to his workload.

On November 25, 2016, Plaintiff was called into Assistant Warden Fondren's office to discuss his complaint to the Ethics Department. Fondren told Plaintiff that "they did not like how he went about reporting the issues and concerns he was having regarding the safety issues, discrimination, and retaliation."[1]

On December 1, 2016, Defendants informed Plaintiff that he had until December 31, 2016, to complete the required training. Defendants did not tell him that his employment would be in jeopardy if he failed to do so.

On December 5, 2016, Frank Vanoy, one of the inmates involved in a fight on November 18, requested Plaintiff move him to a different pod because he was concerned about his safety. Plaintiff interrogated Vanoy regarding his concerns and checked the system to see if he had any housing restrictions placed in his file. When it was determined that he did not, Plaintiff authorized moving Vanoy to O-Pod.

On December 12, 2016, Vanoy was involved in an altercation with another inmate. Defendants attempted to use Plaintiff as the scapegoat for this altercation, even though he was not on shift. They stated that Plaintiff's decision to move Vanoy was the cause of the altercation.

---

[1] Doc. 1, ¶ 36.

3

On January 3, 2017, the training and development manager notified Warden Thomas that Plaintiff had not completed the required training and he was placed on administrative leave pending investigation. Plaintiff had completed 5 of the 24 required training hours.

On January 19, 2017, Plaintiff again contacted the Ethics Office and informed them that the retaliation, intimidation, and harassment against him continued.

On February 8, 2017, Plaintiff's employment was terminated. On February 24, 2017, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission (the "Charge"). Plaintiff alleged the following in the Charge:

> I was hired by Respondent on or about 4/11/11 and I last held a position as a Shift Supervisor.
>
> I was subjected to unfair terms and conditions of my employment, including but not limited to unfair evaluation, harassment, hostile work environment, and discipline.
>
> Because of the unfair treatment, I filed several grievances. Because of my grievances, I was wrongfully terminated.
>
> I believe this was discrimination against me because of my race, black, in violation of Title VII of the Civil Rights Act of 1964, as amended, and retaliation against me for opposing acts made unlawful under Title VII of the Civil Rights Act of 1964, as amended.[2]

Plaintiff received a Notice of Right to Sue Letter on March 2, 2017, and filed this lawsuit on May 30, 2017.

## II.   Legal Standards

Defendants move to dismiss all three counts for failure to state a claim under Fed. R. Civ. P. 12(b)(6) and/or for failure to exhaust administrative remedies. To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state

---

[2] Doc. 1-1 at 3.

4

a claim to relief that is plausible on its face.'"[3] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[4] "Under this standard, 'the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims.'"[5] Although the Court assumes the complaint's factual allegations are true, it need not accept mere legal conclusions as true.[6] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not enough to state a claim for relief.[7]

## III. Analysis

Defendants make four arguments for dismissal: 1) Plaintiff has failed to exhaust administrative remedies for his Title VII and ADEA claims; 2) Plaintiff has failed to state a claim for retaliation; 3) Plaintiff has failed to state a claim for age discrimination under the ADEA; and 4) Plaintiff's discrimination claim fails because Defendants' alleged actions were not severe or pervasive, his performance evaluation was not an adverse employment action, and his termination was allegedly a result of retaliation, not race discrimination. The Court addresses each argument in turn.

### A. Administrative Exhaustion

Title VII and the ADEA both require exhaustion of administrative remedies.[8] In the Tenth Circuit, failure to exhaust administrative remedies is a jurisdictional bar to filing suit in

---

[3] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[4] *Id.* (citing *Twombly*, 550 U.S. at 556).

[5] *Carter v. United States*, 667 F. Supp. 2d 1259, 1262 (D. Kan. 2009) (quoting *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007)).

[6] *Id.* at 1263.

[7] *Iqbal*, 556 U.S. at 678.

[8] *Shikles v. Sprint/United Mgmt. Co.*, 426 F.3d 1304, 1317 (10th Cir. 2005).

5

federal court.[9] Because exhaustion of administrative remedies is a jurisdictional requirement, the plaintiff bears the burden of showing exhaustion.[10] The first step to exhaustion is the filing of a charge of discrimination with the EEOC.[11] The second step is to determine the scope of the allegations raised in the EEOC charge because "[a] plaintiff's claim in federal court is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC."[12] Charges filed with the EEOC are liberally construed to determine whether administrative remedies have been exhausted as to a particular claim.[13]

Defendants argue the Charge did not include any facts to support the age and race discrimination claims. They say the Charge did not even assert a claim based on age discrimination. As for race-based discrimination, Defendants say Plaintiff asserted the claim but relied upon an insufficient, conclusory statement. Plaintiff counters that he has exhausted his administrative remedies necessary to bring a Title VII and an ADEA claim. The Court disagrees.

Plaintiff has failed to exhaust his administrative remedies as to his age discrimination claim for several reasons. First, Plaintiff only checked the "Race" and "Retaliation" boxes for the bases-of-the-discrimination section of the Charge.[14] He left the "Age" box unmarked. Second, and more importantly, he provided no factual details in his written explanation to

---

[9] *Jones v. U.P.S., Inc.,* 502 F.3d 1176, 1183 (10th Cir.2007) (citing *MacKenzie v. City & County of Denver,* 414 F.3d 1266, 1274 (10th Cir.2005)).

[10] *McBride v. CITGO Petroleum Corp.*, 281 F.3d 1099, 1106 (10th Cir. 2002).

[11] *Id.* (citing *Jones v. Runyon,* 91 F.3d 1398, 1399 n. 1 (10th Cir.1996)).

[12] *Id.* (citing *MacKenzie,* 414 F.3d at 1274).

[13] *Id.*

[14] Doc. 1-1 at 3.

suggest that he intended to assert an age discrimination claim.  The words "age" and "old" appear nowhere in the "Particulars" section of the Charge.[15]

The Court rejects Plaintiff's argument that Defendants should have expected that he would assert an age claim after he retained counsel because he stated his year of birth on the Charge.  Providing standard information such as a date of birth is not an indication that Plaintiff was asserting discrimination based on age.[16]  Plaintiff's pro se status affords him a liberal construction of the Charge, but it does not require the Court to infer age discrimination without a basis to do so.[17]  On the current record, Plaintiff has failed to exhaust his administrative remedies as to age discrimination (Count II).[18]  The Court therefore lacks subject matter jurisdiction over Count II, rendering discussion on Defendants' third argument for dismissal unnecessary.

Plaintiff has also failed to exhaust his administrative remedies for his race-discrimination claim.  The Charge contains a single statement relating to race: "I believe this was discrimination against me because of my race, black . . . ."[19]  This is a wholly conclusory statement, insufficient to administratively exhaust a race discrimination claim.[20]  EEOC regulations explicitly state that

---

[15] *Id*.

[16] *See Wilson v. Firestone Tire & Rubber Co*., 932 F.2d 510, 514 (6th Cir. 1991) (stating that the maintenance of age information, "absent direct evidence that it was used in making adverse employment decisions, cannot create even a circumstantial inference of discrimination").

[17] *See Shannon v. Ford Motor Co.*, 72 F.3d 678, 685 (8th Cir. 1996) (explaining courts apply liberal-construction rule to a pro se claim but note there is a difference between liberally reading a claim which lacks specificity, and inventing, ex nihilo, a claim which simply was not made).

[18] *See Ajayi v. Aramark Bus. Servs., Inc.*, 336 F.3d 520, 527 (7th Cir. 2003) (affirming dismissal of age discrimination claim because the date-of-birth field on the charge form was left blank, the age-discrimination box was unchecked, and, in describing the charge, plaintiff did not specify the ages of other employees who allegedly received more favorable treatment nor any other facts that might have alerted the EEOC to an alleged age bias).

[19] Doc. 1-1 at 3.

[20] *Rush v. McDonald's Corp*., 966 F.2d 1104, 1111–12 (7th Cir. 1992) (stating "[s]ome detail, beyond a statement that 'I believe I have been discriminated against because of my race, Black" is necessary to allow the agency to perform its statutory duty"); *Manning v. Blue Cross & Blue Shield of Kan. City*, No. 11-2010-SAC, 2012 WL 2449843, at *2–3 (D. Kan. June 26, 2012), *aff'd*, 522 F. App'x 438 (10th Cir. 2013) (describing similar statements in EEOC charge as vague, generalized language, insufficient to exhaust administrative remedies with

7

"a charge is sufficient when the Commission receives from the person making the charge a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of."[21] "While precise pleading is not required for purposes of Title VII exhaustion, a complete absence of factual specificity, such as here, defeats a plaintiff's subsequent claims."[22] The Court finds Plaintiff's race discrimination and race-based retaliation claims under Title VII have not been exhausted, and must be dismissed for lack of subject matter jurisdiction. These claims, however, may proceed under § 1981, which contains no exhaustion requirement and applies to claims of racial termination.[23]

### B. Section 1981 Claims

Section 1981 "prohibits racial discrimination in the making and enforcement of private contracts."[24] The standard for proving employment discrimination under § 1981 is the same as the standard for proving employment discrimination under Title VII.[25]

In *Khalik v. United Air Lines*,[26] the Tenth Circuit provided an extensive analysis of the pleading standard for employment discrimination and retaliation claims under *Twombly*.[27] The

---

respect to race discrimination and race-based retaliation claims under Title VII). *See also Faibisch v. Univ. of Minn.*, 304 F.3d 797, 803 (8th Cir. 2002) (affirming dismissal of sex discrimination claim for failure to exhaust remedies because: 1) the EEOC charge conclusorily alleged: "[Plaintiff] was also treated with hostility and adversely, impacting the terms and conditions of [her] employment, due to [her] gender/female;" and 2) plaintiff set forth no facts in the EEOC charge that established any connection between the alleged gender discrimination and her termination.).

[21] 29 C.F.R. § 1601.12(b).

[22] *Manning*, 2012 WL 2449843 at *3 (citing *Pierson v. K.W. Brock Directories, Inc*., No. 07-2588-CM, 2008 WL 2782755, *3 (D. Kan. July 7, 2008)) (finding charge of "I was sexually harassed at work. I complained to management about it and finally felt forced to quit" insufficient).

[23] *Clay v. UPS, Inc.*, 983 F. Supp. 2d 1331, 1339 (D. Kan. 2013) ("Section 1981 contains no exhaustion requirement, and applies to claims of racial termination."); *Stewart v. Okla. ex rel. Okla. Office of Juvenile Affairs*, 587 F. App'x 455, 458 n.5 (10th Cir. 2014) ("There is no exhaustion requirement for § 1981 claims.").

[24] *Runyon v. McCrary*, 427 U.S. 160, 168 (1976).

[25] *Drake v. City of Fort Collins*, 927 F.2d 1156, 1162 (10th Cir. 1991).

[26] 671 F.3d 1188 (10th Cir. 2012).

court was careful to note that under *Twombly*, the plaintiff is not required to "set forth a prima facie case for each element" to successfully plead a claim of discrimination.[28] Instead, he is only required to "set forth plausible claims."[29] The *Khalik* court provided a list of facts an employment discrimination plaintiff could reasonably be expected to know and allege to satisfy the plausibility requirement of *Twombly*.[30] Such facts could include the inconsistencies given for the adverse employment decision, when the complaint at issue was filed, the context of the employment decision, or any other reasons the plaintiff believes discrimination or retaliation formed the basis of the decision.[31]

### 1. Retaliation (Count I)

While a plaintiff does not need to establish a prima facie case of retaliation to survive a Rule 12(b)(6) motion, courts examine the elements of a prima facie case of retaliation to determine whether the plaintiff set forth a plausible claim.[32] The elements of a prima facie claim of retaliation under § 1981 are: 1) the plaintiff engaged in protected opposition to discrimination; 2) a reasonable employee would have found the challenged action materially adverse; and 3) a causal connection existed between the protected activity and the materially adverse action.[33]

Defendants challenge the first element only, arguing that Plaintiff has failed to allege any facts demonstrating he engaged in protected opposition to discrimination.[34] Plaintiff alleged he

---

[27] *Id.* at 1193–94.

[28] *Id.* at 1194.

[29] Id.

[30] Id.

[31] Id.

[32] *Id*. at 1192.

[33] *Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 998 (10th Cir. 2011).

[34] In footnote 2 of their memorandum in support of the motion, Defendants argued that the employment decisions to pull Plaintiff from a scheduled training session and to blame Plaintiff for an inmate altercation are not

9

"engaged in protected activity by reporting discrimination, safety concerns and other issues within the prison."[35] Defendants argue that filing a grievance regarding an adverse evaluation or reporting safety concerns are not protected activities under § 1981.

The Court finds unpersuasive Defendants' argument that Plaintiff's filing of a grievance regarding his evaluation does not constitute opposition to discrimination. Plaintiff alleged that in 2015, he received a Problem Solving Notice ("PSN") for allowing two staff members to work beyond 16 hours in a 24-hour day.[36] He further alleged that other white Captain/Supervisors had done the same, yet they did not receive any disciplinary action for it.[37] He then alleged that as a result of the PSN, he received an adverse performance evaluation in 2016, which "he grieved on the merits."[38] These allegations support an inference that his race played a part in receiving the PSN and his adverse evaluation. Plaintiff's grievance regarding his evaluation was race-related and constituted opposition to discrimination.

Plaintiff, however, alleged nothing in the Complaint to suggest that his reports of security deficiencies and safety concerns were related to a discriminatory employment practice based on race.[39] Accordingly, the Court grants Defendants' motion to the extent Plaintiff asserts a retaliation claim based on reporting safety concerns within the prison.

---

adverse employment actions. Defendants concede, however, that termination of employment is an adverse employment action, rendering discussion regarding this element unnecessary.

[35] Doc. 1 ¶ 45.

[36] *Id*. ¶ 20.

[37] *Id*. ¶ 21.

[38] *Id*. ¶ 22.

[39] *Cf. Kwaning v. Cmty. Educ. Ctrs., Inc.*, No. CIV.A. 15-928, 2015 WL 1600068, at *1 (E.D. Pa. Apr. 8, 2015) (plaintiff alleged that prison management assigned rover duty on racial grounds).

### 2. Race-based Discrimination (Count III)

In Count III, Plaintiff alleged that Defendants subjected him to harassment and discrimination, including termination of his employment due to his race.  Defendants urge dismissal of Count III because: 1) Defendants' alleged actions were not severe or pervasive; 2) Plaintiff's performance evaluation was not an adverse employment action; and 3) Plaintiff's termination allegedly was a result of retaliation, not racial discrimination.

#### a) Hostile Work Environment

Plaintiff's racial harassment claim is a hostile work environment claim.  To state a claim for a racially hostile work environment, the plaintiff must allege: 1) the harassment was pervasive or severe enough to alter the terms, conditions, or privilege of employment; and 2) the harassment was racial or stemmed from racial animus.[40]  Defendants argue that Plaintiff has failed to allege severe and pervasive harassment.  They contend the allegedly adverse acts of pulling Plaintiff out of a training class without explanation, making him a scapegoat for an inmate altercation, and issuing him a PSN while not disciplining Caucasian supervisors for the same infraction do not meet the severe and pervasive standard of § 1981.[41]  Plaintiff argues that he submitted a prima facie claim of hostile work environment because:

> he believes the actions of Defendants' retaliatory conduct not only heightened the intimidation, ridicule, and insult he endured, but also created an abusive and dangerous working condition because he was falsely blamed for safety breaches such as fights amongst inmates and such information was conveyed to the inmates making [Plaintiff] a daily target for retaliation.[42]

To be actionable, the conduct in question must be severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive and the victim must

---

[40] *Hare v. Donahoe*, 608 F. App'x 627, 630–31 (10th Cir. 2015).

[41] Doc. 8 at 9.

[42] Doc. 12 at 10.

11

subjectively regard that environment as abusive.[43] Courts must examine the totality of the circumstances to determine the existence of a hostile work environment, including: 1) the frequency of the alleged discriminatory conduct; 2) its severity; 3) whether it is physically threatening or humiliating; or a mere offensive utterance; and 4) whether the conduct unreasonably interfered with the plaintiff's work performance.[44]

Here, Plaintiff alleged discriminatory conduct spanning a period of over two years, 2015 until February 2017. Plaintiff specifically alleged the issuance of the 2015 PSN and the resultant 2016 adverse employee evaluation were race-related. The Court agrees these incidents alone are not severe or pervasive harassment.[45] Plaintiff, however, also alleged that Defendants subjected him to other adverse employment acts: 1) removing him from training course, 2) blaming him for an altercation between inmates, 3) placing him on administrative leave for failing to complete the requisite training hours, and 4) terminating his employment. Although removal from the training course did not subject Plaintiff to anything that was physically threatening or humiliating, Plaintiff alleged that it affected his ability to complete the requisite training hours, which affected his ability to work. Indeed, it appears the removal from training had the domino effect of suspension from work and then termination.

Plaintiff's scapegoat allegation also supports an inference that his ability to work was negatively affected. A prison guard who is in trouble with his supervisors or does not have the backing of his colleagues may well have a tougher time managing inmates if they perceive a weakness in the guard's position within the prison. Drawing all reasonable inferences in

---

[43] *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21–22 (1993).

[44] *Id.* at 23.

[45] *Dye v. Moniz*, 672 F. App'x 836, 839–40 (10th Cir. 2016) (finding assignment of nonmeaningful work, negative job evaluation, and threatened negative performance evaluation were not objectively offensive actions sufficient to establish hostile work environment claim).

Plaintiff's favor, the Court cannot find that these adverse acts were not severe and pervasive. The Court concludes the Complaint plausibly states a claim for hostile work environment.

Plaintiff, however, has not stated sufficient facts to state a claim for a hostile work environment based on inmate harassment. For an employer to be found liable for the harassing conduct of inmates, the plaintiff must allege that his employer knew or reasonably should have known about the harassment and failed to take reasonable remedial action.[46] The Court agrees with Defendants that the Complaint contains no allegations regarding inmate harassment or retaliation that can be imputed to Defendants. Nor did Plaintiff allege Defendants knew or reasonably should have known about the inmate harassment and failed to take reasonable remedial action. Because this case is still in the early stages, the Court, *sua sponte*, grants Plaintiff leave to amend his Complaint for the limited purpose of alleging facts regarding inmate harassment to shore up his hostile work environment claim.

### b) Disparate Treatment based on the 2016 Adverse Performance Evaluation

Defendants urge dismissal of the race discrimination claim to the extent it is based on Plaintiff's 2016 adverse performance evaluation (the "Evaluation") because it is not an adverse employment action. Plaintiff argues that the Evaluation denied him promotional opportunities and other financial incentives, and was used as a pretext to terminate his employment. Defendants counter that Plaintiff did not plead any factual allegations to suggest that the Evaluation resulted in his discharge, changed his compensation, or had any adverse impact.

The Tenth Circuit liberally construes "adverse employment action."[47] The Tenth Circuit has held that negative performance evaluations can constitute adverse employment action in

---

[46] *Davis v. Vt., Dep't of Corr.*, 868 F. Supp. 2d 313, 330 (D. Vt. 2012).

[47] *See Jeffries v. State of Kan.*, 147 F.3d 1220, 1232 (10th Cir. 1998).

certain circumstances.[48]  In *Toth*, the Tenth Circuit concluded that the plaintiff suffered an adverse employment action for purposes of her Title VII retaliation claim when she received negative performance evaluations that ultimately resulted in her discharge.[49]

Because this case is still in the early stages and given the nature of the factual deficiencies, the Court, *sua sponte*, grants Plaintiff leave to amend his Complaint for the limited purpose of alleging facts regarding the Evaluation.  The Court denies without prejudice Defendants' request to dismiss the racial discrimination claim based on the Evaluation.

### c) Discriminatory Termination

Defendants argue that Plaintiff alleged his termination was due to retaliation, not discrimination, thus his claim for discriminatory termination should be dismissed.  The Court finds this argument specious.  Plaintiff alleged his employment was terminated as a pretext for unlawful age and race discrimination and retaliation.[50]  Defendants provide no authority and the Court has found none that says Plaintiff may not assert both claims.

## IV. Conclusion

Plaintiff's age discrimination claim (Count II) and Plaintiff's race discrimination and retaliation claims under Title VII are dismissed for lack of subject matter jurisdiction.  Plaintiff's retaliation claim based on reporting safety concerns within the prison is dismissed for failure to state a claim.  Plaintiff is granted leave to amend the Complaint in order to rescue his § 1981 racial discrimination claim based on the Evaluation and to shore up his hostile environment claim based on inmate harassment.  If Plaintiff fails to amend the Complaint within 14 days of the issuance on the order on his motion to amend (Doc. 17), these claims will be dismissed.

---

[48] *Toth v. Gates Rubber Co.*, No. 99-1017, 2000 WL 796068 (10th Cir. June 21, 2000).

[49] *Id.* at *9.

[50] Doc. 1, ¶¶ 5, 50, and 53.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss (Doc. 8) is GRANTED IN PART AND DENIED IN PART as set forth above.


Dated: January 10, 2018

                                          S/ Julie A. Robinson
                                         JULIE A. ROBINSON
                                         UNITED STATES DISTRICT JUDGE