IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

KENNETH W. WILLIAMS,

    **Plaintiff,**

    v.

CORECIVIC, INC. AND CORECIVIC OF
TENNESSEE, LLC,

    **Defendants.**

Case No. 17-2310-JAR

## MEMORANDUM AND ORDER

Before the Court is Plaintiff's Motion for Leave to Amend Complaint (Doc. 17) and Defendants' Motion to Strike First Amended Complaint (Doc. 35). Both motions have been fully briefed and the Court is prepared to rule. For the reasons stated below, Plaintiff's motion to amend is granted, and Defendants' motion to strike is granted in part and denied in part.

**I.    Procedural Background**

On May 30, 2017, Plaintiff filed a complaint against his former employer, alleging retaliation under Title VII and 42 U.S.C. § 1981 (Count I), age discrimination under the Age Discrimination in Employment Act ("ADEA") (Count II), and race discrimination under Title VII and 42 U.S.C. § 1981 (Count III).[1] In lieu of filing an answer, Defendants filed a motion to dismiss all three counts for failure to state claims on September 1, 2017.[2]

---

[1] Doc. 1.
[2] Doc. 7.

Before the Court ruled on the motion to dismiss, Plaintiff filed a motion to amend his complaint to add two claims—Count IV, retaliatory discharge under Kansas common law, and Count V, retaliation in violation of the False Claims Act.[3]

On January 11, 2018, this Court granted in part and denied in part the motion to dismiss (the "Dismissal Order").[4]  Specifically, the Court dismissed Plaintiff's age discrimination claim (Count II), all claims under Title VII, and the retaliation claim based on reporting safety concerns within the prison.  This left the following claims intact—Count I to the extent it alleged a § 1981 retaliation claim, and Count III to the extent it alleged race-based discrimination under § 1981 due to a hostile work environment and disparate treatment.

This Court also granted Plaintiff leave "to amend the Complaint . . . to rescue his § 1981 [disparate treatment claim] based on the Evaluation and to shore up his hostile environment claim based on inmate harassment."[5]  The Court stated "[i]f Plaintiff fails to amend the Complaint within 14 days of the issuance [of] the order on his motion to amend (Doc. 17), these claims will be dismissed."[6]  By tying the amendment deadline to the issuance of the anticipated order on the motion to amend, the Court intended that Plaintiff would wait for Magistrate Judge Rushfelt's ruling on that motion and file one amended complaint.  Instead, on January 25, 2018, before Judge Rushfelt ruled on the motion to amend, Plaintiff filed his First Amended Complaint (the "FAC").[7]  The FAC included Counts IV and V, which leave to add had not yet been granted.

---

[3] Doc. 17.

[4] Doc. 30.

[5] *Id*. at 14.

[6] *Id*.  The Court clarifies that its citation to Doc. 17 here in no way was a ruling granting leave to amend the Complaint to add Counts IV and V.  Frankly, the Court does not see how Plaintiff could arrive at such a broad construction of this sentence.

[7] Doc. 34.

2

The FAC also included claims this Court had dismissed; namely, the Title VII and ADEA claims. Not surprisingly, Defendants filed a motion to strike the FAC in its entirety for exceeding the scope of the Dismissal Order.[8] Plaintiff argues the FAC complies with the Dismissal Order because the Court did not order him to remove the dismissed counts or prohibit him from citing facts or allegations contained in the dismissed counts to shore up or rescue the § 1981 claims for race and hostile work environment.

## II.    Motion to Amend

Plaintiff seeks leave to add two claims—Count IV, retaliatory discharge under Kansas common law, and Count V, retaliation in violation of the False Claims Act ("FCA").[9] Defendants oppose the addition of these two claims, arguing: 1) undue delay, and 2) futility. The Court rejects the undue delay argument because Defendants did not oppose Plaintiff's request to file his response out of time and the one-month delay in filing the motion to amend after seeking Defendants' consent was not unreasonable. Defendants' futility arguments require more analysis.

### A. Standard for Evaluating a Motion to Amend on Grounds of Futility

The Federal Rules of Civil Procedure provide that a party may amend his or her pleading once as a matter of course or, after a responsive pleading has been filed, "only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires."[10] The decision whether to grant leave to amend is within the discretion of the district

---

[8] Doc. 35.

[9] Doc. 17. Plaintiff attached a proposed First Amended Complaint to his motion to amend. He then filed the FAC, which contained more allegations and claims. Because the filed FAC supersedes the proposed amended complaint, the Court will consider the filed FAC (Doc. 34) for purposes of the motion to amend.

[10] Fed. R. Civ. P. 15(a).

court.[11]  The Court may justifiably refuse leave to amend on the grounds of undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or futility of the proposed amendment.[12]  A motion to amend may be denied as futile "if the proposed amendment could not have withstood a motion to dismiss or otherwise failed to state a claim."[13]  The party opposing amendment bears the burden of establishing its futility.[14]

Rule 12(b)(6) allows dismissal of a complaint only where it appears that the facts alleged fail to state a plausible claim for relief.[15]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[16]  Complaints containing no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" may not survive a motion to dismiss.[17]  The Court must assume that all allegations in the complaint are true.[18]  "The issue in resolving a motion such as this is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims.  Indeed[,] it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test."[19]

---

[11] *Hayes v. Whitman*, 264 F.3d 1017, 1026 (10th Cir. 2001).

[12] *Foman v. Davis*, 371 U.S. 178, 182 (1962).

[13] *Schepp v. Fremont Cty.*, 900 F.2d 1448, 1451 (10th Cir. 1990).

[14] *Anderson v. PAR Elec. Contractors, Inc.*, 318 F.R.D. 640, 642 (D. Kan. 2017) (citations omitted).

[15] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

[16] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (clarifying and affirming *Twombly's* probability standard).

[17] *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008).

[18] *Twombly*, 550 U.S. at 589.

[19] *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

### B. Count IV - Retaliatory Discharge in Violation of Kansas Common Law

Plaintiff seeks leave to assert a claim for retaliatory discharge under Kansas common law based on him reporting safety issues and other workplace concerns to corporate management. In other words, Plaintiff wants to add a retaliatory discharge claim for whistle-blowing.[20] Defendants argue that it would be futile to allow Plaintiff to add this claim because he has failed to: 1) specifically state the actions Defendants committed that were in violation of public policy, and 2) identify the specific and definite rule, regulation, or law which was violated, citing *Diebold v. Sprint/United Management Co.*[21] Plaintiff counters that he is not required to identify a specific rule, regulation, or law which Defendants allegedly violated at this stage of litigation.

In *Palmer v. Brown*,[22] the Kansas Supreme Court laid out the elements for a whistle-blowing retaliatory discharge claim:

> To maintain such action, an employee has the burden of proving by clear and convincing evidence, under the facts of the case, a reasonably prudent person would have concluded the employee's co-worker or employer was engaged in activities in violation of rules, regulations, or the law pertaining to public health, safety, and the general welfare; the employer had knowledge of the employee's reporting of such violation prior to discharge of the employee; and the employee was discharged in retaliation for making the report."[23]

In addition, the reporting must have been done in good faith, and the infraction must have been reported to "either company management or law enforcement officials."[24]

---

[20] *Koehler v. Hunter Care Ctrs., Inc.*, 6 F. Supp. 2d 1237, 1241 (D. Kan. 1998) (noting exception announced in *Palmer* is commonly referred to as the whistleblower exception).

[21] No. 01–2504–KHV, 2002 WL 1071923 (D. Kan. Apr. 29, 2002); Doc. 21 at 4.

[22] 752 P.2d 685 (Kan. 1988).

[23] *Id*. at 690.

[24] *Id*.

In *Heckman v. Zurich Holding Company of America*,[25] the defendants likewise relied upon *Diebold* for the proposition that the plaintiff must identify a specific law.  The *Heckman* court found that reliance misplaced because the *Diebold* complaint had identified specific laws and regulations which defendant allegedly violated, but contained no allegations regarding defendant's conduct.[26]  In contrast, Heckman had alleged objectionable conduct—lying to and misleading various state insurance regulators.  The *Heckman* court concluded that at the pleading stage of the litigation, the plaintiff was not required to identify a specific rule, regulation, or law which defendants allegedly violated where plaintiff had alleged the objectionable conduct which formed the basis of her whistleblower claim.[27]

Here, as in *Heckman*, Plaintiff identified specific laws and regulations which Defendants allegedly violated—K.S.A. §§ 44-636 and 44-615.  In *Palmer*, the Kansas Supreme Court noted that "[n]o employee may be fired for . . . testifying before the secretary of human resources, K.S.A. 44–615; or for reporting unsafe or unlawful working conditions to the secretary of human resources, K.S.A. 44-636."[28]  Because there are no allegations that Plaintiff testified or was going to testify before the secretary of human resources, K.S.A. 44-615 is inapplicable.  Plaintiff, however, has pled enough facts to infer a violation of K.S.A. 44-636.

Plaintiff alleged that various security deficiencies in Defendants' operation of its Leavenworth facility has led to an alarming increase in inmate fights and assaults on staff members.[29]  He also alleged that Defendants' refusal to follow and enforce safety procedures

---

[25] No. 06-2435-KHV, 2007 WL 677607 (D. Kan. Feb. 28, 2007).

[26] *Id*. at *5.

[27] *Id*.

[28] *Palmer*, 752 P.2d at 687.

[29] Doc. 34 at 6, ¶ 39–40.

6

subjected him to constant verbal abuse and risk of inmate attacks.[30] He further alleged that he was often left isolated with inmates.[31] The Court finds Plaintiff included enough allegations regarding Defendant's objectionable conduct—refusing to follow and enforce safety protocols and leaving him isolated with inmates—to give rise to a plausible common law retaliatory discharge claim. And though more specificity about safety violations would be helpful to identify the issues, that is a matter best left for discovery. For these reasons, the Court grants Plaintiff leave to add Count IV.

C. **Count V – Retaliation in Violation of the FCA**

Count V alleges retaliation in violation of the FCA. Defendants argue that it would be futile to allow Plaintiff to assert a FCA claim because: 1) Plaintiff has not alleged he complained of any false or fraudulent claims submitted to the government for payment; and 2) the FCA does not encompass complaints regarding safety or regulatory noncompliance. Defendants contend the mere presence of federal funding does not implicate the FCA because that would dramatically expand the scope of the FCA. The Court finds Defendants' argument unpersuasive.

In *United States ex rel. Conner v. Salina Regional Health Center*,[32] the Tenth Circuit noted:

> The FCA recognizes two types of actionable claims—factually false claims and legally false claims. In a run-of-the-mill "factually false" case, proving falsehood is relatively straightforward: A relator must generally show that the government payee has submitted "an incorrect description of goods or services provided or a request for reimbursement for goods or services never provided." [*Mikes v. Straus*, 274 F.3d 687, 97 (2nd Cir. 2001)]. By contrast, in a claim based on an alleged legal falsehood, the relator must demonstrate that the defendant has

---

[30] Doc. 34 at 7, ¶ 42.

[31] *Id.*, ¶ 43.

[32] 543 F.3d 1211 (10th Cir. 2008).

"certifie[d] compliance with a statute or regulation as a condition to government payment," yet knowingly failed to comply with such statute or regulation. *Id.*[33]

In *Universal Health Services, Inc. v. United States ex rel. Escobar*,[34] the Supreme Court held that "[w]hen . . . a defendant makes representations in submitting a claim but omits its violations of statutory, regulatory, or contractual requirements, those omissions can be a basis for liability if they render the defendant's representations misleading with respect to the goods or services provided."[35] Thus, the FCA may encompass safety or regulatory noncompliance. However, "[the] misrepresentation about compliance with a statutory, regulatory, or contractual requirement must be material to the Government's payment decision in order to be actionable under the False Claims Act."[36]

In Count V, Plaintiff alleged that "Defendants receive financial compensation from the United States government to house federal prisoners in accordance with certain regulations and requirements established and set forth by law"[37] and that "[t]he issues [he] reported were detrimental to the safe operation of the facility and [Defendants] intentionally concealed various issues to remain in compliance as a federal contractor with the United States government."[38] These allegations state a plausible implied certification claim. From these allegations, the Court infers that Defendants must submit claims to the government for payment and those claims require a certification as to regulatory compliance. And though recovery may appear remote on the face of the pleadings regarding regulatory compliance and its materiality for payment,

---

[33] *Id*. at 1217.

[34] 136 S. Ct. 1989 (2016).

[35] *Id.* at 1999.

[36] *Id*.

[37] Doc. 34 at 16, ¶ 104.

[38] *Id*., ¶ 106.

8

Plaintiff has pled sufficient facts to allow him to offer evidence to support these claims. Details regarding regulatory compliance and its materiality for payments are matters best left for discovery and on summary judgment. The Court concludes Defendants have failed to meet their burden of showing the futility of adding Count V and grants Plaintiff leave to add Count V.

### III.     Motion to Strike

#### A. Standard to Strike Pleading

Federal Rule of Civil Procedure 12(f) provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."[39] Striking a pleading is a drastic measure, and may often be brought as a dilatory tactic, thus motions to strike under Rule 12(f) are generally disfavored.[40] Because motions to strike are disfavored, a court "'should decline to strike material from a pleading unless that material has no possible relation to the controversy and may prejudice the opposing party.'"[41] The decision to grant a motion to strike is within the district court's sound discretion.[42]

#### B. Discussion

Defendants object to the FAC because: 1) it still asserts Title VII and ADEA claims and includes factual allegations regarding administrative exhaustion of those claims; 2) it included the Kansas whistleblowing claim and the FCA claim before the Court had granted Plaintiff leave to add them; and 3) it intermingles allegations regarding the § 1981 claim with the previously

---

[39] Fed. R. Civ. P. 12(f).

[40] *Nwakpuda v. Falley's, Inc.*, 14 F. Supp. 2d 1213, 1215 (D. Kan. 1998); *RMD, L.L.C. v. Nitto Ams., Inc.*, No. 09–2056, 2012 WL 1033542, at *2 (D. Kan. Mar. 27, 2012) (citing *Thompson v. Jiffy Lube Int'l, Inc.*, No. 05–1203, 2005 WL 2219325, at *1 (D. Kan. Sept. 13, 2005)).

[41] *Falley v. Friends Univ.*, 787 F. Supp. 2d 1255, 1257 (D. Kan. 2011) (quoting *Wilhelm v. TLC Lawn Care, Inc.*, No. 07-2465, 2008 WL 474265, at *2 (D. Kan. Feb. 19, 2008)).

[42] *Id. See Kendall State Bank v. W. Point Underwriters, L.L.C.*, No. 10–2319–JTM, 2012 WL 3890264, at *2 (D. Kan. Sept. 7, 2012).

dismissed ADEA claim, putting Defendants in the untenable position of having to answer paragraphs and entire counts that have already been dismissed.  Plaintiff explains that he did not remove any counts dismissed by the Dismissal Order and added Count VI and Count VII to "avoid any confusion of having them intertwined with the Title VII claims as they were before."[43]  Plaintiff also points out that "[n]othing in the Court's order stated that Plaintiff was to remove the dismissed counts."[44]

The Court finds Plaintiff's argument that the Court did not order him to remove the dismissed counts cavalier.  The Court, however, will give Plaintiff the benefit of the doubt that he included the dismissed claims to avoid confusion that may ensue due to re-numbering of the counts after Count II had been dismissed.  While clarity is commendable, Plaintiff could have achieved that goal by acknowledging the dismissal of Count II with a footnote or parenthetical that indicated that count had been previously dismissed.  Accordingly, the Court strikes Count II and all references to Title VII.

The Court's ruling on the motion to amend renders Defendants' objections to the addition of Count IV and V moot.  As for Counts VI and VII, they should have been integrated into Count III as sub-claims.  The Court, however, sees no harm in allowing them to be listed as separate claims.  The Court denies the motion to strike to the extent it seeks the removal of these claim.

## IV.   Conclusion

Although Plaintiff's allegations are thin, for purposes of a motion to amend based on futility, the Court concludes that Plaintiff has pleaded enough facts to plausibly suggest that Defendants retaliated against him for whistleblowing (Count IV) and that Defendants falsely

---

[43] Doc. 36 at 2.

[44] *Id*. at 3.

certified compliance with a statute or regulation as a condition to government payment yet knowingly failed to comply with such statute or regulation (Count V).  Counts VI and VII are simply reiterations of Plaintiff's sub-claims for a § 1981 race-based discrimination claim for disparate treatment and a hostile work environment.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Amend (Doc. 17) is GRANTED and Defendants' Motion to Strike (Doc. 35) is GRANTED IN PART AND DENIED IN PART.

**IT IS FURTHER ORDERED** that Plaintiff file a Second Amended Complaint consistent with this Order within 10 days from the date of this order.

Dated: April 18, 2018

                                            S/ Julie A. Robinson
                                            JULIE A. ROBINSON
                                            UNITED STATES DISTRICT JUDGE